F I L E D

**UNITED STATES COURT OF APPEALS**

DEC 21 1999

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | No. 99-6098 |
| v. | (D.C. No. 98-CR-117-M) |
| MICHAEL SCHAFFER, | (W.D. Okla.) |
| Defendant-Appellant. | |

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **McKAY**, and **MURPHY**, Circuit Judges.

After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant Michael Schaffer appeals his conviction and sentence following a conditional guilty plea to a violation of 21 U.S.C. § 844(a). He challenges his conviction by arguing that the district court erroneously denied his motion to

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

dismiss the indictment, and he complains that his sentence is erroneous because the court improperly computed his criminal history.

On March 3, 1997, a correctional officer stopped Defendant--then an inmate at the Federal Correctional Institution, El Reno, Oklahoma--as he was leaving another inmate's cell. While the officer was attempting to search Defendant, Defendant wrestled away and threw something on the floor that was later determined to be heroin. Defendant was placed in a special housing unit in administrative detention from March 3, 1997, until July 13, 1998, when he appeared in federal court. In April and May 1997, the FBI investigated the incident, interviewing Defendant and collecting the evidence from the prison. In July 1997, the FBI sent the evidence to the DEA to be analyzed. The FBI did not receive the lab results confirming that the substance was heroin from the DEA until March 6, 1998. Shortly thereafter, on March 10, 1998, the FBI sent the results to the United States Attorney. In June 1998, an assistant U.S. Attorney contacted the FBI about the case, and on July 7, 1998, Defendant was initially indicted on one count of possessing contraband in a federal prison in violation of 18 U.S.C. § 1791(a)(2), (d)(1)(C).

Defendant filed a motion to dismiss the indictment on July 24, 1998, claiming that the preindictment delay deprived him of his rights to due process and a speedy trial. See R., Vol. 1 at Doc. 8. The district court denied the motion

for the reasons stated in the Government's response, namely that Defendant failed to show prejudice from any delay or governmental intent to harass or gain an advantage from the delay.  See id. at Doc. 10; Doc. 9 at 8-10.  On September 18, 1998, pursuant to Fed. R. Crim. P. (11)(a)(2), Defendant entered a conditional guilty plea to a superseding indictment charging possession of heroin in violation of 21 U.S.C. § 844(a), reserving the right to appeal the district court's denial of his motion to dismiss the indictment.  The court sentenced him to a term of twenty-seven months' imprisonment to run consecutively to the previously undischarged term of imprisonment, to be followed by one year of supervised release.[1]

## I.

Defendant first argues on appeal that the court erred in denying his motion to dismiss the indictment for violations of his Fifth and Sixth Amendment rights. Specifically, he claims that his rights to due process and a speedy trial were violated by his fifteen-month detainment in administrative detention and by the government's delay in bringing an indictment.  "Whether [Defendant's] due

---

[1]On January 15, 1998, Defendant filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 to obtain relief from his conditions of confinement.  The district court denied relief for failure to state a claim to the extent that the petition constituted a Bivens-type claim, but it dismissed without prejudice the speedy trial claims.  See Order filed September 30, 1998, No. CIV-98-79-A (W.D. Okla.).

process rights were denied by a delay in bringing an indictment is a question of fact, which this court reviews for clear error." United States v. Trammell, 133 F.3d 1343, 1351 (10th Cir. 1998).[2]

With respect to the allegation of a due process violation, the Supreme Court has held that "the Due Process Clause has a limited role to play in protecting against oppressive [pre-indictment] delay." United States v. Lovasco, 431 U.S. 783, 789 (1977). "'Preindictment delay is not a violation of the Due Process Clause unless the defendant shows both that the delay caused actual prejudice and that the government delayed purposefully in order to gain a tactical advantage.'" Trammell, 133 F.3d at 1351 (quoting United States v. Johnson, 120 F.3d 1107, 1110 (10th Cir. 1997)). To establish a due process violation based on preindictment delay a defendant must show definite and not speculative prejudice; conclusory and unspecific allegations of prejudice are insufficient to constitute a showing of actual prejudice. See United States v. Marion, 404 U.S. 307, 325-26 (1971); Trammell, 133 F.3d at 1351.

Defendant asserts that the Government's delay caused him prejudice and

---

[2]While this court appears to have applied differing standards of review to a district court's grant or denial of a motion to dismiss the indictment based on preindictment delay, compare Trammel, 133 F.3d at 1351 (citing United States v. Engstrom, 965 F.2d 836, 838 (10th Cir. 1992)), with United States v. Comosona, 848 F.2d 1110, 1113 (10th Cir. 1988) (applying abuse of discretion standard), for purposes of this appeal we apply the clearly erroneous standard utilized by our more recent decision in Trammell.

-4-

was "designed to harass him and gain a tactical advantage." Appellant's Br. at 12. He also complains about his administrative detention, alleging that the fifteen-month segregation exacted a "great mental and physical toll" which in turn affected his ability "to reconstruct and recall" events and witnesses related to the March 3, 1997 incident.[3] Id. He does not, however, set forth facts explaining how any missing "witnesses' testimony would have been of benefit to his case," Trammell, 133 F.3d at 1351, and his conclusory and broad allegations fail to show specific prejudice caused by the delay. See United States v. Jenkins, 701 F.2d 850, 855 (10th Cir. 1983), rejected on other grounds by Batson v. Kentucky, 476 U.S. 79 (1986).

Nor does Defendant present any evidence tending to establish that the delay in indictment "was an intentional ploy to gain a tactical advantage." Trammell, 133 F.3d at 1351. The record indicates that the delay was primarily attributable to the length of time it took for the DEA to analyze the seized substance. Further, the record shows that because Defendant was serving 120 months' imprisonment for a 1993 conviction, for which he was not eligible for release during the delay period, there was no known reason for expediting Defendant's case. The Government also stated that in March 1998 indictments were filed in six other

---

[3]The length of the preindictment delay actually appears to be 16 months, instead of the 15 months described by Defendant.

cases assigned to the Assistant U.S. Attorney responsible for this case. Because of the number of pending indictments, the Government waited about four months before indicting Defendant. See R., Vol. 1, Doc. 9 at 4. These types of delays in criminal prosecutions are not unusual and do not satisfy Defendant's burden to show some culpatory or intentional action on the part of the Government. See Trammell, 133 F.3d at 1351 (affirming district court's finding that three-year and nine-month preindictment delay attributable to backlog of cases and shortages of attorneys did not show intent to injure defendant). We hold that the court did not clearly err in finding that Defendant failed to allege the kind of substantial prejudice that warrants dismissal and in thus concluding that Defendant's due process rights were not violated.

Defendant's second argument is that the preindictment delay violated his Sixth Amendment right to a speedy trial. While we have clearly stated that this right is not triggered until an accused is formally charged or arrested, see Johnson, 120 F.3d at 1109 (citing Marion, 404 U.S. at 320), Defendant suggests that the right attached when he was held in administrative detention. The circuit courts unanimously agree that administrative or disciplinary segregation in prison does not constitute an arrest under Sixth Amendment jurisprudence. See United States v. Bambulas, 571 F.2d 525, 527 (10th Cir. 1978); accord United States v. Mills, 810 F.2d 907, 909 (9th Cir. 1987); United States v. Mills, 704 F.2d 1553,

1556-57 (11th Cir. 1983); <u>United States v. Daniels</u>, 698 F.2d 221, 223 (4th Cir. 1983); <u>United States v. Duke</u>, 527 F.2d 386, 390 (5th Cir. 1976); <u>cf. United States v. Gouveia</u>, 467 U.S. 180, 190 n.6 (1984) (stating that Court expressed "no view as to when the Sixth Amendment speedy trial right attaches" but noting Ninth and Fifth Circuit cases holding that prisoner's administrative segregation "does not constitute an 'arrest'" for purposes of speedy trial right); <u>United States v. Joseph</u>, 50 F.3d 401, 402 (7th Cir. 1995) (noting that, in context of calculating criminal history and related sentences, federal prisoners are not "arrested" when "placed in segregation pending the determination of disciplinary charges against them"); <u>Rivera v. Toft</u>, 477 F.2d 534, 535 (10th Cir. 1973) (explaining in context of double punishment question that "the discipline of inmates arises while they are in custody pursuant to unrelated valid convictions and [administrative segregation] is not considered an 'arrest'"). In light of these cases, and because we are bound by Tenth Circuit precedent, Defendant's argument on the Sixth Amendment violation is foreclosed.

For these reasons we hold that the court did not clearly err in denying Defendant's motion to dismiss the indictment for preindictment delay.

## II.

Defendant also challenges his sentence, contending that the district court

-7-

erred twice in calculating his criminal history. We review the court's factual findings for clear error and its legal interpretation of the Sentencing Guidelines de novo. See United States v. Henry, 164 F.3d 1304, 1310 (10th Cir.), cert. denied, __ U.S. __ , 119 S. Ct. 2381 (1999). We are mindful of our obligation to give "due deference to the district court's application of the guidelines to the facts." Id.

Defendant complains that the court improperly counted two prior convictions separately in its criminal history calculation because those convictions were related under § 4A1.2 of the United States Sentencing Guidelines. Based on the presentence report, the district court found that these two prior sentences were "not related because they were in fact separated by an intervening arrest." R., Vol. 2 at 28; see id., Vol. 3 at ¶ 26, 27. The court therefore assessed three points for each conviction, adding six points to Defendant's criminal history.

The convictions at issue were for possession of methamphetamine. Defendant was arrested on April 7, 1989, and again on May 31, 1989. For both offenses, he was sentenced on March 30, 1990, to twelve years' imprisonment with the sentences to run concurrently.

Commentary to § 4A1.2 of the Sentencing Guidelines provides that "[p]rior sentences are not considered related if they were for offenses that were separated by an intervening arrest." U.S.S.G. § 4A1.2 comment. (n.3). An example of

unrelated sentences would be when "the defendant is arrested for the first offense prior to committing the second offense." Id. The commentary then states that "*[o]therwise*, prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." Id. (emphasis added). Defendant claims that because the offenses were consolidated for sentencing, the court should have treated the two convictions as related and assessed only three points instead of six points. He also argues that the offenses were related because their similarity indicates that they were part of a single common scheme or plan.

The evidence at sentencing demonstrated that the two offenses were separated by an intervening arrest. Defendant was arrested first on April 7, 1989, before committing the second offense on May 31, 1989. Although in both instances Defendant was stopped for a traffic violation, he was in two different cars, two separate arrest reports were written by the police department, and the arrests occurred approximately two months apart. See R., Vol. 2 at 22-23. The Government is correct in arguing that because an intervening arrest separated these two prior offenses we need not examine the considerations contained in the "otherwise" portion of the commentary; we are bound by the "intervening arrest" language. Cf. United States v. McCloud, 127 F.3d 1284, 1292 (10th Cir. 1997) (applying intervening arrest language of § 4A1.2 comment. (n.3) to uphold district

court's finding that prior sentences were not related offenses for criminal history purposes). From this evidence, we cannot say that the court erred in finding that the two sentences were unrelated for purposes of assessing criminal history, nor did it err in applying the commentary of § 4A1.2.

Defendant also asserts that the court erred in giving three criminal history points for a 1981 conviction for delivery of marijuana which emanated from a multiplicious indictment. He attempts to collaterally attack this prior conviction because he believes that the count to which he pleaded guilty was unconstitutional because the indictment charged two deliveries of marijuana to the same man on the same date. See Appellant's Br. at 21; R., Vol. 2 at 6.

Commentary note 6 to § 4A1.2 states that "[w]ith respect to the current sentencing proceeding, this guideline and commentary do not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law." U.S.S.G. § 4A1.2 comment. (n.6). In United States v. Simpson, 94 F.3d 1373, 1381-82 (10th Cir. 1996), we decided that the district court correctly determined that the defendant was precluded from collaterally attacking his prior conviction for criminal history purposes under the Sentencing Guidelines because he did not allege a complete denial of counsel. Because Defendant here has not collaterally attacked his 1981 conviction "'based on the complete denial of counsel,'" id. at 1381 (citing United States v. Garcia, 42

F.3d 573, 581 (10th Cir. 1994)); <u>see</u> U.S.S.G. § 4A1.2, comment. (n.6), he is precluded from collaterally attacking the prior conviction for sentencing purposes. We hold that the district court did not err in assessing three criminal history points for Defendant's 1981 conviction. The court correctly determined Defendant's sentence.

## III.

For the foregoing reasons, we affirm Defendant's sentence and conviction.

**AFFIRMED**.

Entered for the Court


Monroe G. McKay
Circuit Judge